UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CR-355-SEP |
| | ) |
| CHRISTIAN HOCK, | ) |
| | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

1. **PARTIES:**

The parties are the defendant CHRISTIAN HOCK, represented by defense counsel Tara Crane, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I and II of the charge, the government agrees that no further federal prosecution will be brought in this District relative to the defendant's Distribution and Possession of Child Pornography between approximately December 2019 and May 2020, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties agree to recommend to the Court that it grant a four-level downward variance. The parties further jointly recommend that the Court sentence the defendant to a term of imprisonment of 120 months. The parties understand and agree that the Court is not a party nor bound to follow this recommendation. Further, should the Court not follow this recommendation and sentence the defendant to a higher sentence, the parties agree that will not serve as a basis for the defendant to withdraw the plea of guilty.

The defendant also agrees, pursuant to the guilty plea to Counts I and II, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: Samsung Galaxy S9 cell phone and McLaren 5G cell phone.

3. **ELEMENTS:**

As to Count I, the defendant admits to knowingly violating Title 18, United States Code, Section 2252A(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Distribution of Child Pornography which he admits to knowingly committing and for which he admits there is a factual basis are: (1) defendant knowingly distributed (2) using any means or facility of interstate or foreign commerce, including by computer, (3) images of child pornography, (4) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct.

As to Count II, the defendant admits to knowingly violating Title 18, United States Code, Section 2252A(a)(5)(B), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Possession of Child Pornography which he admits to

knowingly committing and for which he admits there is a factual basis are: (1) defendant knowingly possessed material that contained images of child pornography, (2) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct, and (3) those images are contained on material that has been transported in interstate commerce and were themselves transported in interstate commerce.

**4.  FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

1. In August 2018, the Federal Bureau of Investigation ("FBI") - St Louis Division received a lead from FBI - Birmingham Division related an investigation of David Aaron Drake, who was advertising and selling child pornography via Tumblr. As part of this investigation, the FBI discovered that Drake communicated with his customers through Wickr and accepted payments through Cash App, amongst other services.

2. A review of Drake's Cash App account revealed that between August 23, 2018, and September 23, 2018, user "Christ" sent funds to Drake on seven different occasions as follows:

   a.  08/23/2018 at 2:18 PM, "Christ" completed a transaction for $30. The details of the transaction were listed as "eheh.

   b.  08/24/2018 at 1:35 AM, "Christ" completed a transaction for $30. The details of the transaction were listed as "huh.

   c.  08/26/2018 at 27:26 AM, "Christ" completed a transaction for $30. The details of the transaction were listed as "hd."

  d. 09/15/2018 at 12:29 AM, "Christ" completed a transaction for $30. The details of the transaction were listed as "NA."

  e. 09/16/2018 at 7:30 PM, "Christ" completed a transaction for $30. The details of the transaction were listed as "link."

  f. 09/19/2018 at 4:19 AM, "Christ" completed a transaction for $30. The details of the transaction were listed as "link.

  g. 09/23/2018 at 11:59 PM, "Christ" completed a transaction for $40. The details of the transaction were listed as "link."

3. The FBI discovered that Cash App account "Christ" was registered to the defendant, who resides in St. Louis, Missouri.

4. On February 11, 2020, law enforcement officers met with the defendant at his residence. The defendant was read his Miranda rights and he stated that he understood his rights and agreed to speak with law enforcement. The interview was audio recorded. During the interview, the defendant stated that he suffers from depression and anxiety. The defendant admitted that he had purchased child pornography on several occasions in the past and that he had paid for it through his Cash App account "Christ." The defendant stated that he downloaded the child pornography but that he wasn't sure if he had it anymore. The defendant further stated that he had not viewed child pornography for several months.

5. During this interview, law enforcement seized the defendant's Samsung Galaxy S9 cell phone and the defendant consented to a search of the device.

6. On February 21, 2020, law enforcement obtained a valid federal search warrant for the Samsung Galaxy S9 cell phone. This device was forensically examined. Law enforcement discovered that the Telegram application, which is an encrypted messaging application, was

4

installed on the device. Within the Telegram application, law enforcement discovered that the defendant had sent several images and videos of child pornography to others on December 22, 2019, including:

    a. "OkshTYwk.jpg" – a graphic image that depicts a toddler aged boy being anally penetrated by an adult penis.

    b. "75438fc144.360.mp4" – a graphic video that depicts, in part, an adult male inserting his penis into the rectum of a young, pre-teen aged boy in various sexual positions. The adult male then ejaculates onto the penis of the boy.

    c. "M3.mp4" – a graphic video that depicts, in part, a toddler aged child being anally penetrated with a penis by an adult male.

7. In addition, law enforcement discovered that the defendant was communicating with several others through the Telegram application to discuss the children of relatives that each of them had and to trade photographs of these children. Specifically, the defendant had sent multiple images of his nephew "J." to at least two different Telegram users. At least two of these photographs depicted J. naked in the bathroom when he was under one year of age. Additional non-child pornographic photographs of J. and his bedroom were also traded by the defendant.

8. In addition to the images described above, there were multiple images on the defendant's Samsung Galaxy S9 phone that depict babies being sexually assaulted.

9. On May 5, 2020, law enforcement officers again travelled to the defendant's residence to further discuss some of the images and videos that were discovered on his Samsung Galaxy S9 cell phone. The defendant was read his Miranda rights and he stated that he understood his rights and agreed to speak with law enforcement. The interview was audio recorded. During

the interview, the defendant stated denied producing any child pornography and stated that all of the images on his previously seized phone were obtained from other people via the internet.

10. During this interview, law enforcement observed that the defendant had in his possession a McLaren 5G cell phone. The defendant admitted that he had child pornography on this device, and consented to a search.

11. On May 14, 2020, law enforcement obtained a valid federal search warrant for the defendant's McLaren 5G cell phone. The device was forensically examined. As part of this examination, law enforcement discovered more than 700 images and videos of child pornography on the device, including:

   a. "missionary.mp4" – a graphic video that depicts, in part, a pre-pubescent minor male in a lewd and lascivious display of his genitals being anally penetrated;

   b. "5_63256262231525998904.mp4" - a graphic video that depicts, in part, a pre-pubescent minor female in a lewd and lascivious display of his genitals being anally penetrated;

   c. "5_6314310779407433983.mp4" - a graphic video that depicts, in part, a male toddler in a lewd and lascivious display of his genitals being anally penetrated;

   d. "4_5933569517824247555.mp4" - a graphic video that depicts, in part, a toddler male being anally penetrated;

   e. "5_6314258788828315933.mp4" - a graphic video that depicts, in part, a toddler female in a lewd and lascivious display of her genitals while an object is inserted into her vagina.

6

12. In addition, law enforcement discovered that the defendant had been using the Telegram application to trade child pornography with others.

13. The internet is a computer communications network using interstate and foreign lines to transmit data streams, including data streams used to store, transfer and receive graphic files. The internet is a means and facility of interstate and foreign commerce.

14. In summary, the defendant admits to the following:

   a. On or about December 22, 2019, the defendant knowingly distributed images of child pornography using his Samsung Galaxy S9 cell phone, the Internet, and the Telegram application, and the images were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct.

   b. Between on or about April 1, 2020, and on or about May 5, 2020, the defendant knowingly possessed more than 600 images of child pornography that was produced using materials that traveled in interstate and foreign commerce, to wit, a McLaren 5G cell phone, said cell phone having been produced outside Missouri, and said cell phone contained child pornography.

5. **STATUTORY PENALTIES:**

As to Count I, the defendant fully understands that the maximum possible penalty provided by law for the crime of Distribution of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than 20 years and a fine of not more than $250,000. The Court may also impose a period of supervised release of not more than **life** years and not less than five years. **The defendant fully understands that the crimes to which a guilty plea is being entered,**

**Receipt of Child Pornography, requires a mandatory minimum term of imprisonment of at least 5 years.**

As to Count II, the defendant fully understands that the maximum possible penalty provided by law for the crime of Possession of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than ten years, and a fine of not more than $250,000. The Court may also impose a period of supervised release of not more than **life** and not less than five years.

The defendant understands that the Court may impose the sentences to run consecutively (one after the other), or concurrently (at the same time).

Additionally, per 18 U.S.C. § 2259A, defendant fully understands that for offenses committed on or after December 7, 2018, in addition to other assessments, the Court may impose an assessment for each count of no more than:

(1) $17,000.00 if convicted of 18 U.S.C. § 2252(a)(4) or § 2252A(a)(5), regarding the possession of, or access with intent to view, child pornography;

(2) $35,000.00 if convicted of any other trafficking in child pornography offense as defined by § 2259(c)(3), which includes offenses under:
   i. 18 U.S.C. § 2251(d);
   ii. 18 U.S.C. §§ 2252(a)(1) through (3);
   iii. 18 U.S.C. §§ 2252A(a)(1) through (4);
   iv. 18 U.S.C. § 2252A(g) (in cases in which the series of felony violations exclusively involves violations of §§ 2251(d), 2252, 2252A(a)(1) through (5), or 2260(b)); or
   v. 18 U.S.C. 2260(b);

6. **U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal

History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

    a.    **Offense Conduct:**

        (1)    **Count I – Distribution of Child Pornography**

            (a)    **Base Offense Level:** The parties agree that the base offense level is **twenty-two (22)**, as found in Section 2G2.2(a)(2).

            (b)    **Chapter 2 Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

                (i)    **Two (2)** levels should be added pursuant to §2G2.2(b)(2), because the "material involved a prepubescent minor or a minor who had not attained the age of 12 years;"

                (ii)    **Five (5)** levels should be added pursuant to §2G2.2(b)(3)(B) because the defendant distributed in exchange for valuable consideration, but not for pecuniary gain;

                (iii)    **Four (4)** levels should be added pursuant to §2G2.2(b)(4), because the "offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence;"

                (iv)    **Two (2)** levels should be added pursuant to §2G2.2(b)(6), because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with the intent to view the material;" and

(v) **Five (5)** levels should be added pursuant to §2G2.2(b)(7)(D), because the offense involved "600 or more images" of child pornography.

(3) **Count II – Possession of Child Pornography**

(a) **Base Offense Level:** The parties agree that the base offense level is **eighteen (18)**, as found in Section 2G2.2(a)(1).

(b) **Chapter 2 Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

(i) **Two (2)** levels should be added pursuant to §2G2.2(b)(2), because the "material involved a prepubescent minor or a minor who had not attained the age of 12 years;"

(ii) **Five (5)** levels should be added pursuant to §2G2.2(b)(3)(B) because the defendant distributed in exchange for valuable consideration, but not for pecuniary gain;

(iii) **Four (4)** levels should be added pursuant to §2G2.2(b)(4), because the "offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence;"

(iv) **Two (2)** levels should be added pursuant to §2G2.2(b)(6), because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with the intent to view the material;" and

10

        (v)    **Five (5)** levels should be added pursuant to §2G2.2(b)(7)(D), because the offense involved "600 or more images" of child pornography.

    b.    **Chapter 3 Adjustments**: The parties recommend that the following adjustments, other than acceptance of responsibility, apply:

        (1)    Counts I (Distribution of Child Pornography) and II (Possession of Child Pornography) group pursuant to Section 3D1.2(d). The offense level for the group is forty (40).

    d.    **Other Chapter 3 Adjustments:**

    **(1) Acceptance of Responsibility:** The parties agree that **three (3)** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    **(2)**     **Other Adjustments:** The parties agree that the following additional adjustments apply: none.

    c.    **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is **thirty-seven (37). The parties, however, recommend to the Court that it grant a downward variance and sentence the defendant to a term of imprisonment of 120 months.**

  **d.** **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  **e.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.** **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  **a.** **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1)** **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

  **(2)** **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category.

Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

  **b.** **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

  **c.** **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.** **OTHER:**

  **a.** **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

  **b.** **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

  **c.** **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. Some of these special conditions may include that defendant not

possess a computer or internet access, that defendant not have contact with minors without the authorization of the Probation Officer, that defendant participate in sexual offender counseling and that defendant not maintain a post office box. In addition, as a condition of supervised release, defendant shall initially register with the state sex offender registration in Missouri, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The defendant shall comply with all requirements of federal and state sex offender registration laws.

These and any other special conditions imposed by the Court will be restrictions with which defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

      d.      **Mandatory Special Assessment:**    Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, and before September 30, 2021, the Court is required to impose an assessment of $5,000 on any non-indigent defendant convicted of an offense under – Chapter 110 (relating to sexual exploitation and other abuse of children, including, but not limited to, 18 U.S.C. §2251(a)

14

(production of child pornography) and 18 U.S.C. § 2252A (transportation, distribution, receipt, possession, or access with the intent to view child pornography)).

The assessment imposed under 18 U.S.C. § 3014 is in addition to the mandatory special assessment imposed under 18 U.S.C. § 3013.

    e.    **Possibility of Detention:**  The defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    f.    **Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Sections 3663A and 2259, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2259. Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2259 and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty. Under Section 2259(c)(3), the minimum amount of restitution per victim for each count if conviction is $3,000 for crimes occurring on and after December 7, 2018.

    g.    **Forfeiture:**  The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: Samsung Galaxy S9 cell phone and McLaren 5G cell phone. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or

criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

9.    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant understands that by pleading guilty, defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply for life. The defendant understands that defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person said sex offender registration information. Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If defendant resides in Missouri following release from prison, defendant will be subject to the registration requirements of Missouri state law. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction. Defense counsel has advised the defendant of the possible sex offender registration consequences resulting from the plea.

If the defendant is not a U.S. citizen, the guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or

deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

### 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crimes, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12.     NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

10/14/21
Date

KYLE T. BATEMAN
Assistant United States Attorney

10-13-21
Date

CHRISTIAN HOCK
Defendant

10-13-21
Date

TARA CRANE
Attorney for Defendant